**BANNERCRAFT CLOTHING CO., INC.**

v.

**The UNITED STATES.**

Nos. 354–74, 355–74.

United States Court of Claims.

June 25, 1975.

Robert L. Ackerly, Washington, D. C., for plaintiff; Gilbert A. Cuneo, Washington, D. C., atty. of record. James J. Gallagher, Sellers, Conner & Cuneo, Washington, D. C., of counsel.

Sheldon J. Wolfe, Washington, D. C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

## ON DEFENDANT'S MOTIONS FOR JUDGMENTS IN AID OF EXECUTION OF THE RENEGOTIATION ORDERS OF JULY 1, 1974

KUNZIG, Judge.

The question here at issue is whether a Covenant Not to Convey (or other interest in real estate) is acceptable collateral sufficient to stay the execution of the orders of the Renegotiation Board (Board) during *de novo* redetermination in this court. A similar issue was presented in *Manufacturers Service Co., Inc. v. United States*, Ct.Cl., 518 F.2d 1202, also decided today. We reaffirm the principle enunciated in *Manufacturers Service Co., Inc. v. United States, supra*, and hold that execution of the Board's orders are stayed only by the filing of a 100 percent surety or collateral bond as defined by Ct.Cl.R. 26.

Plaintiff corporation filed its petitions in this court on September 26, 1974 for a redetermination of excessive profits for its fiscal years 1966 and 1967, under Section 108 of the Renegotiation Act of 1951, 50 U.S.C. App. § 1218, *as amended* (Supp. II, 1972). Its renegotiable sales, according to the petitions, were $7,350,-766.74 [1] and its renegotiable profits were $1,825,981.15,[2] of which the Board determined that $1,496,018 was excessive.[3] Federal tax credits for the two years at issue were determined by the Internal Revenue Service to be $718,088.65,[4] leaving the Board's determinations of net excessive profits [5] at $777,929.35.[6]

---

1. Renegotiable sales for the two years were as follows:

    FY 1966—$2,349,882.50
    FY 1967—$5,000,884.24

2. Renegotiable profit for each component year was as follows:

    FY 1966—$ 187,530.94
    FY 1967—$1,638,450.21

3. Annual excessive profits, adjusted for taxes measured by income, other than Federal taxes, were as follows:

    FY 1966—$ 64,921.00
    FY 1967—$1,431,097.00

4. Federal tax credit for each component year as determined by the Internal Revenue Service was as follows:

    FY 1966—$ 31,162.09
    FY 1967—$686,926.56

5. Net excessive profits are the excessive profits found by the Renegotiation Board less appropriate tax credits. Before issuing an order, the Board adjusts the excessive profit computation to reflect allowable credit for any taxes measured by income, exclusive of Federal income taxes. A further credit for Federal income taxes is computed by the Internal Reve-

On November 21, 1974, defendant filed its answer and counterclaim to each of plaintiff's two petitions. At the same time, defendant filed the present motions for judgment in aid of execution of the Board's orders. As of the above date, plaintiff had made no attempt to file any bond with this court nor had any attempt been made to obtain a judicial waiver of the bond requirement.[7] Instead, plaintiff waited until February 6, 1975, the date of its response to defendant's motions for judgment, to request this court's approval of a Covenant Not to Convey and various other guarantees as collateral sufficient to stay the execution of the Board's orders. Plaintiff added a jurisdictional argument by supplemental brief filed March 17, 1975.

Plaintiff's opposition to defendant's motions is two-fold. It is plaintiff's primary position that contra to our Rule 26 definition, the tendered security on otherwise unencumbered land should be considered "good and sufficient bond" under 50 U.S.C. App. § 1218. Plaintiff additionally submits that this court does not have jurisdiction to enter judgment on defendant's motions.

Defendant argues that acceptance of plaintiff's tendered security would undercut the Congressional intent of providing prompt protection of the Government's interest during the pendency of litigation. Defendant further asserts Ct. Cl.R. 26 is dispositive as to what is a "good and sufficient" bond. Such determination should not be disturbed except by the promulgation of a different rule applicable to all plaintiffs. For the reasons stated below, we hold for defendant.

In *Manufacturers Service Co., Inc. v. United States, supra,* this court examined the legislative history of the bond provision contained in Section 108 of the Renegotiation Act of 1951, 50 U.S.C. App. § 1218, *as amended* (Supp. II, 1972). We concluded that Congress, by consistently providing for immediate execution of an order of the Renegotiation Board separate and apart from judicial redetermination, intended to insure the protection of the Government's interest against the dissipation of a plaintiff's assets during the pendency of the litigation. Such protection would, of course, be afforded if a plaintiff paid the amount of the Board's order and then brought suit in this court for a refund claim. Alternatively, the Government's interest would be protected by an award of a judgment in the same amount. In lieu of a judgment, however, it was deemed by Congress that the prompt filing of a good and sufficient bond, affording essentially the same protection as the above two methods, would be permitted to stay the execution of the Board's order.

Ct.Cl.R. 26 was promulgated to implement the above Congressional intention vis-a-vis the acceptance of a bond to stay the execution of the Board's order. Such stay would only be permitted in the limited circumstances where, within ten days after the filing of a petition, plaintiff tenders a 100 percent surety or acceptable collateral bond. *Manufacturers*

---

nue Service subsequent to the Board's order. In computing the amount of the bond to be filed in order to stay the execution of the Board's order, our court rules require 100 percent of the net amount owed. Where the Internal Revenue Service has not yet determined the exact amount of the Federal tax credit, this court will accept plaintiff's good faith estimate of the offset, subject to modification when the actual figures are known.

6. Net excessive profits found by the Renegotiation Board adjusted for Federal tax credit for each component year were as follows:

FY 1966—$ 33,758.91
FY 1967—$744,170.44

7. Plaintiff asserts that it did not file a motion requesting this court to accept real estate collateral in lieu of bond because counsel for plaintiff and defendant were discussing a possible consent by the defendant to a bond secured by plaintiff's interest in the real property. Plaintiff submits it raised the issue before the court only after defendant filed its Motions for Judgment. Nevertheless, it is conceded that plaintiff did not comply with our Rule 26.

**608**

*Service Co., Inc. v. United States, supra* (518 F.2d at 1206).

Plaintiff's tender of an interest in real estate as collateral, even if timely filed, fails to satisfy Ct.Cl.R. 26. Ct.Cl.R. 26(c) defines acceptable sureties as follows:

> * * * Acceptable sureties on bonds shall be those bonding companies holding certificates of authority from the Secretary of the Treasury. (See the latest U.S. Treasury Dept. Circ. 570).

Ct.Cl.R. 26(d) limits acceptable collateral as follows:

> * * * If collateral is to be deposited as security for a bond, in lieu of a surety, United States Government marketable public securities, fully negotiable by the bearer, owned by the plaintiff, in a sum equal at their par value to the amount of the bond to be furnished, will be acceptable when accompanied by the necessary power of attorney.

By approving the above two types of bonds, this court has provided a well-defined means by which a stay can be obtained. The filing of either type of bond with the clerk of this court can be accepted without requiring a court-conducted investigation of sufficiency. Since no inquiry is necessitated, both the filing and acceptance of either bond can be accomplished within the ten day grace period of both 50 U.S.C. App. § 1218 and Ct.Cl.R. 26(b). In addition, both the surety and collateral bonds approved by the court possess the added advantages of stability and liquidity. The dollar guarantees of each are immune from market fluctuations which could adversely affect the value of other forms of collateral.

By contrast, plaintiff's interest in real estate as collateral offers neither of the advantages of the bonds acceptable under Ct.Cl.R. 26. Rather than being automatically acceptable, an interest in real estate would require valuation by the court to determine whether the proffered collateral possesses a current dollar worth equal to at least 100 percent of the Board's order. Such valuation by its very nature would necessarily extend well beyond ten days after the filing of plaintiff's petition. During this entire valuation period, the Government would be left totally unprotected, having neither a bond nor any judicial means for collecting the amount deemed owed by the Board. Such a result would clearly frustrate the Congressional intention to utilize the pay now, litigate later sequence of 50 U.S.C. App. § 1218.

Likewise, an interest in real estate does not offer the same dollar protection of the two court approved bonds. Unlike Government marketable securities or the guarantee of certified bonding companies, the appraised value of land does not insure that such amount would be realized if the land were sold. Indeed, even plaintiff recognizes this instability by asking this court to accept the fact that land subject to a forced sale might not realize a sales price even close to its appraised value or to that which could be negotiated between a willing seller and a willing buyer. It is precisely this above possibility which led this court to conclude that real estate collateral is not an acceptable type of bond.

In the instant case, plaintiff has not even attempted to comply with the filing time requirement of Ct.Cl.R. 26(b). The ten-day period for seeking a stay is an integral part of the bond provision of 50 U.S.C. App. § 1218. Without such a time limitation, it seems apparent that the Congressional intention of prompt payment to protect the Government's interest could be circumvented by the filing of frivolous appeals by plaintiffs seeking only to forestall compliance. Thus, even if the tendered collateral was of the type approved by this court, its tardy filing would preclude the granting of a stay of execution of the Board's orders.

■ Since plaintiff's belated tender of an interest in real estate as collateral does not comply with our rule to stay the execution of the Board's orders, defendant's motions for judgment must be granted absent some unusual or mitigating circumstances that excuse plaintiff's

failure. In the instant case, plaintiff has not succeeded in making such a showing.

■ The thrust of plaintiff's opposition to defendant's motions is centered on the alleged financial hardship plaintiff would suffer if judgment was entered. However, the mere assertion of potential financial hardship has been held to be insufficient to prevent the entry of a judgment in aid of execution. *Manufacturers Service Co., Inc. v. United States, supra,* and *O'Brien Gear & Machine Co. v. United States,* 199 Ct.Cl. 1014 (1972). In the instant case, plaintiff has presented nothing that would persuade this court to apply a different standard.

■ As to plaintiff's jurisdictional challenge, we are of the belief that our holding in *Sandnes' Sons, Inc. v. United States,* 462 F.2d 1388, 199 Ct.Cl. 107 (1972), is dispositive. Plaintiff argues that defendant's motion for judgment in aid of execution is, in effect, a counterclaim, by whatever name it is called. As such, our statutory authority for granting judgment on a counterclaim, 28 U.S.C. § 2508, precludes our rendering of the requested judgment while plaintiff's claim in chief is undecided. In other words, plaintiff asserts the Government does not presently have any claim for money damages and will only obtain a claim if the defendant prevails in the principal action. This is the exact argument we rejected in *Sandnes' Sons, Inc. v. United States, supra,* and we again reject today.[8]

We thus conclude that where an approved surety or collateral bond is not timely filed, the Government possesses an immediate right to seek a judgment in aid of execution. This court has jurisdiction to grant defendant's motion for judgment under 28 U.S.C. § 2508 in renegotiation cases, even though the claim in chief is undecided. Such judgment will be granted absent some compelling showing of unusual or mitigating circumstances.

Accordingly, defendant's motions for judgment in aid of execution of the Board's orders are granted and judgment is entered in the amount of seven hundred seventy-seven thousand nine hundred twenty-nine dollars and thirty-five cents ($777,929.35), with interest as provided by law. 50 U.S.C. App. § 1215(b)(2).

DAVIS, Judge (concurring in the result):

This company did not attempt to file any sort of bond within the ten-day period (or a reasonable time thereafter), nor has it ever offered a monetary bond. In this respect the case seems to me to differ significantly from *Manufacturers Service Co., Inc. v. United States,* Ct.Cl., 518 F.2d 1202 decided this day. The Renegotiation Act and our Rule 26 contemplate a monetary bond, not real-property collateral. Perhaps if plaintiff had tendered a timely temporary bond and then later sought to substitute the real-estate collateral, there could be room for the court, in its discretion, to accept the substitution. But plaintiff did not take that route and I agree that its only proffer fails to comply with the statute and the rule. On the jurisdictional issue I join the court.

---

**8.** If we were to accept plaintiff's position, the Government would be required to seek collection of the Renegotiation Board's order in a Federal District Court just as if plaintiff had chosen not to appeal the Board's order. In a Federal District Court collection action, the Government would be a plaintiff and thus avoid the counterclaim question. Since the outcome of the District Court action would almost certainly be the same as we would decide, the only gain plaintiff could possibly achieve would be to forestall payment. Such delay would clearly frustrate the Congressional intention of prompt protection against the potential dissipation of a plaintiff's assets during the pendency of litigation.